ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/12/25_

INSURED ADVOCACY GROUP, LLC,

                    Plaintiff,

        - against -

MIAMI LEAK DETECTION & SERVICES,
LLC, and GABRIEL A. GIL DESEDA,
individually,

                    Defendants.

24 Civ. 2491 (LLS)

OPINION & ORDER

Plaintiff Insured Advocacy Group, LLC ("IAG") brought this breach of contract action against defendants Gabriel A. Gil Deseda ("Gil") and Miami Leak Detection & Services, LLC ("Miami Leak"). Defendants move to dismiss the First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the FAC (Dkt. No. 23) and its attachments, and they are presumed to be true for the purposes of this motion.

Plaintiff IAG is a Texas limited liability company with its principal place of business in Texas. FAC ¶ 2. Defendant Miami Leak is a Florida limited liability company with its principal place of business in Florida. Id. ¶ 4. Defendant Gil is the managing member of Miami Leak. Id. ¶ 5. "Miami Leak provides

-1-

property damage services to various customers ("Services") in consideration in part for the customer's execution of an assignment of claims (an "AOC") or a letter of protection ("LOP") for claims that the customer may have against an insurer or other responsible party (the "Claims") for the costs incurred by the customer in connection with the applicable property damage including, but not limited to, the costs incurred by the customer to Miami Leak for the Services that it provides to the customer." Id. ¶ 6.

IAG and Miami Leak are parties to a First Party Claims Non-Recourse Sale and Assignment Agreement (the "Agreement"), in which Miami Leak agreed to sell and IAG agreed to purchase certain accounts that Miami Leak maintains. Id. ¶ 9; Dkt. No. 23-1. These accounts document the amounts owed to Miami Leak by responsible parties for Services provided to customers who have executed AOCs or LOPs in favor of Miami Leak. FAC ¶ 9.

Article 2.4 of the Agreement requires Miami Leak to report its receipt of any and all payments made on accounts purchased by IAG within forty-eight hours and immediately transmit those payments to IAG. Id. ¶ 14; Dkt. No. 23-1. Article 7.3 outlines the buyer repurchase requirement: in the event Miami Leak is in breach of any representation or warranty relating to an account that IAG purchased from Miami Leak, IAG may demand in writing that Miami Leak either repurchase the defective account or

exchange it for another account from Miami Leak with a substantially equivalent account balance. FAC ¶ 20; Dkt. No. 23-1.

Plaintiff alleges that Miami Leak failed to report and transmit payments to IAG in accordance with the Agreement. FAC ¶¶ 14-15. On November 20, 2023, and February 19, 2024, IAG wrote to Miami Leak about the existence of defective accounts and demanded that Miami Leak deposit all money received and repurchase the specified accounts, but Miami Leak failed to do so. Id. ¶¶ 16-17, 21-22; Dkt. No. 23-2. IAG alleges that, upon information and belief, Miami Leak continues to receive such proceeds and fails to transmit them to IAG. FAC ¶ 19.

As a result, IAG contends that Miami Leak has breached the Agreement and defaulted. Id. ¶¶ 18, 22. IAG terminated the Agreement pursuant to Sections 8.1 and 8.2, which outline the events and effects of default. Id. ¶ 23; Dkt. No. 23-1. IAG asserts that all the payment obligations of Miami Leak and Gil under the Agreement – which total at least $473,656.07, exclusive of interest, cost, and attorney's fees – are immediately due and payable. FAC ¶¶ 23-24. IAG brings claims for breach of the Agreement and a demand for accounting against both defendants.

## PROCEDURAL HISTORY

Plaintiff initially filed its complaint against defendants

on April 2, 2024 (Dkt. No. 1). On October 21, 2024, defendants
moved to dismiss (Dkt. No. 20). Plaintiff subsequently amended
its complaint on November 8, 2024, removing its claims for
conversion and imposition of constructive trust (Dkt. No. 23).
On December 10, 2024, defendants filed the instant motion to
dismiss the FAC (Dkt. No. 24).

## LEGAL STANDARD

"In considering a motion to dismiss for failure to state a
claim pursuant to Rule 12(b)(6), a district court may consider
the facts alleged in the complaint, documents attached to the
complaint as exhibits, and documents incorporated by reference
in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104,
111 (2d Cir. 2010). The Court accepts "all factual allegations
in the complaint as true, drawing all reasonable inferences in
favor of the plaintiff." Kelly-Brown v. Winfrey, 717 F.3d 295,
304 (2d Cir. 2013). To survive a motion to dismiss, a complaint
must plead "enough facts to state a claim to relief that is
plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007). A complaint must offer more than "labels and
conclusions," "a formulaic recitation of the elements of a cause
of action," or "naked assertion[s]...without some further
factual enhancement." Id. at 557. A claim is facially plausible
"when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable

-4-

for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

**DISCUSSION**

Defendants move to dismiss the FAC in its entirety. They argue that (1) IAG failed to satisfy a condition precedent of the Agreement by providing the defendants with notice and an opportunity to cure, and (2) that the FAC should be dismissed against Gil because it fails to allege any conduct against him individually. The Court addresses each issue in turn.

## I.    Notice and Cure

Defendants argue that both counts fail because IAG did not satisfy the notice and cure provisions in Sections 7.2 and 9.4, which read as follows:

> <u>7.2 Notification.</u> Buyer shall notify Seller in writing of the circumstances which Buyer has discovered which give rise to Buyer's right to require Seller to repurchase any Selected Account or Account Balance. Seller shall have five business (5) days from receipt of written notification from Buyer, to consummate the repurchase and refund the Purchase Price. Seller's failure to timely repurchase any Selected Account shall constitute an event of default.
>
> <u>9.4 Notice of Breach.</u> Upon discovery by the Seller of (i) any breach of the Agreement by Seller, including, but not limited to, a breach of any of the representations and warranties of the Seller set forth in this Agreement, or (ii) any material adverse change in Seller's business that could negatively affect any of the Accounts or Account Balances, Seller shall give Buyer written notice, describing the issue in reasonable detail, within three (3) Business Days following such discovery.

Dkt. No. 23-1.

Notice and cure provisions are generally enforceable under Texas law. See Duncan v. Woodlawn Mfg., Ltd., 479 S.W.3d 886, 895 (Tex. App. 2015). Defendants cite numerous cases about the enforcement of notice and cure provisions, but they are not relevant at the motion to dismiss stage. As Judge Liman explained in another breach of contract case brought by IAG,

> the effect that failure to comply with a notice and cure provision might ultimately have on a party's claims on the merits — whether it prevents them from recovering for the other party's breach, constitutes a separate breach of the contract, or yields some other result — is a separate question from whether and with what specificity compliance with a notice and cure provision must be pled in the first instance at the motion to dismiss stage.

Insured Advoc. Grp., LLC v. Spartan Servs. Corp., 2024 WL 3429131, at *5 (S.D.N.Y. July 16, 2024).

Instead, the question is whether plaintiff has adequately pleaded its claims for breach of contract and accounting and its satisfaction of the applicable notice and cure provisions. The Court addresses each count individually.

## A. Count I: Breach of the Agreement

To survive a motion to dismiss, parties must comply with the Federal Rules of Civil Procedure and their interpretations in Iqbal and Twombly, as outlined above. However, "those sources tell parties only how to plead, not what to plead for a state law cause of action." Spartan, 2024 WL 3429131, at *5. To

-6-

determine pleading requirements for a state law cause of action, we must also look to state law. See id. (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Hanna v. Plumer, 380 U.S. 360 (1965)). "In Texas, 'the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" Smith Int'l, Inc. v. Egle Grp., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (quoting Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex. App. 2001)).

Here, plaintiff alleges that IAG and Miami Leak are parties to the Agreement, that the Agreement sets up certain obligations for both parties, that Miami Leak has failed to satisfy its obligations of reporting and transmitting payments to IAG, and that IAG has been damaged. See generally FAC. Plaintiff also alleges that "[a]ll conditions precedent to the filing of this action have been performed, have occurred, or have been waived." Id. ¶ 12. Attached to the FAC are two letters providing written notice to the defendants of the specific accounts that required repurchasing and giving them an opportunity to repurchase those accounts within five business days. Dkt. No. 23-2.

Defendants contend that these allegations are insufficient under Iqbal and the Federal Rules of Civil Procedure. They argue

-7-

that "Rule 9 merely excuses a party from pleading...under an elevated pleading standard. It does not give him license to evade the less rigid - though still operative - strictures of Rule 8." Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009). However, Rule 9(c) provides that, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). Additionally, "Rule 8 only requires a short and plain statement of the claim in a contract action. Plaintiffs can allege in general terms that they have satisfied their obligations under a contract." Spartan, 2024 WL 3429131, at *6; see also Cooper v. Harvey, 108 F. Supp. 3d 463, 470 (N.D. Tex. 2015) (finding that plaintiff stated a claim for breach of contract where he alleged that "he fully complied with his obligations under the Video Contract, and that all conditions precedent to his recovery under the contract were satisfied"); 2 Moore's Federal Practice – Civil § 9.04 ("[F]or a contract claim, it is sufficient that the pleader 'tracks the language' of Rule 9(c) by alleging 'all conditions precedent have occurred or been performed.'").

Plaintiff's allegations are sufficient to survive a motion to dismiss. IAG pleads the essential elements of a breach of contract claim under Texas law, including compliance with all conditions precedent. IAG's inclusion of the two repurchase notices is enough to show satisfaction of the notice and cure

-8-

requirement of Section 7.2 of the Agreement, which appears to be the only relevant provision, as Section 9.4 imposes notice obligations on Miami Leak, not IAG. This is acceptable at the pleading stage. If Miami Leak seeks to counter those allegations, it may do so in its answer.

### B. Count II: Accounting

Defendants argue that IAG's second claim, which is titled "breach of agreement demand for accounting," should also be dismissed for failure to satisfy the notice and cure requirement. Additionally, they contend that IAG is seeking equitable relief that must await a liability determination. Plaintiff counters that it has stated a claim for breach of contract based on defendants' failure to comply with Sections 2.4.1 and 3.1.22 of the Agreement, which entitle IAG to monthly reports and accounting and read as follows:

> 2.4.1 Although all Account Balance payments are expected to be made to the Buyer, in the event Seller receives credits, payments or other consideration distributed or paid by or on behalf of a Customer with respect to any Selected Account, Seller shall report such payments to Buyer and, within forty eight (48) hours of receipt, shall follow the instruction of Buyer to either (i) pay over and/or deliver such payments to Buyer via wire transfer, or (ii) endorse the checks received for payment over to Buyer and forward such checks to Buyer. Seller shall provide Buyer with a monthly report, certified as true and accurate by Seller scheduling (i) all collections received from the Selected Accounts purchased by Buyer and (ii) all payments made to Buyer.

> 3.1.22 Seller shall provide any and all required

> support reasonably requested by Buyer, including
> documents, Account Documents, live testimony in Court
> or depositions, and reports and memoranda necessary or
> desirable, in order to prove the Services and collect
> the Account Balances.

Dkt. No. 23-1.

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." Brown v. Cooley Enters., Inc., 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011) (quoting Michael v. Dyke, 41 S.W.3d 746, 754 (Tex. App. 2001)). "If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues." Watson v. Citimortgage, Inc., 814 F. Supp. 2d 726, 737 (E.D. Tex. 2011). If it "is a separate, equitable cause of action, it is a proper action 'when the facts and accounts in issue are so complex that adequate relief cannot be obtained by law.'" Id. (quoting Brown, 2011 WL 2200605, at *1). However, if plaintiff's claim is for breach of contract, it must simply include the "essential elements of a breach of contract action," which are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex. App.

2001).

IAG fails to state a claim under either of those theories of relief. Count II fails as a claim for accounting because there are no allegations about the complexity of the facts or the inadequacy of other remedies. It similarly fails as a breach of contract claim because it lacks the essential elements required under Texas law. IAG alleges that it has a valid contractual relationship with defendants, that it has performed all relevant conditions precedent of that contract, and that defendants have an obligation to provide monthly reports and account documents. FAC ¶¶ 9, 12, 28-29. However, IAG fails to provide any facts about defendants' breach of the Agreement's accounting provisions or resulting damage. As a result, Count II fails to state a cause of action and is dismissed.

However, it is plausible that IAG could bring a claim for breach of contract based on the accounting provisions of the Agreement. Though plaintiff has not moved for leave to amend, the Court may grant it sua sponte. See Found. Ventures, LLC v. F2G, LTD., 2010 WL 3187294, at *11 (S.D.N.Y. Aug. 11, 2010) (collecting cases). As such, IAG may amend Count II of the FAC to be consistent with this Opinion and Order and is directed to file an amended complaint within 30 days.

## II.  Individual Defendant Gil

Gil moves to dismiss both counts against him, arguing that

-11-

he cannot be held individually liable under Texas law.

"The general rule of corporate law is that officers of a corporation are insulated from personal liability arising from their activities performed in the scope of their duties for the corporation." Portlock v. Perry, 852 S.W.2d 578, 582 (Tex. App. 1993). "However, a corporate officer may be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has knowledge of the tortious conduct, either actual or constructive." Id. "A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." Leyendecker & Assocs., Inc. v. Wechter, 683 S.W.2d 369, 375 (Tex. 1984).

Plaintiff has not pleaded sufficient facts to state a claim against Gil individually. The allegations against him in the FAC are limited and simply establish that he was the corporate representative of Miami Leak. Notably, every allegation against Gil is alleged against Miami Leak as well, with the FAC repeatedly referring to them together as "Miami Leak and Gil." FAC ¶¶ 23-24. There are no allegations that are unique to Gil or that establish his specific participation in or knowledge of tortious conduct that could give rise to individual liability.

Nevertheless, plaintiff argues that Gil is personally bound by all of the terms of the Agreement, as he signed as the Seller's representative. The agreement provides that "Seller's

-12-

representative countersigning this Agreement below, as additional consideration for Buyer's covenants, agrees to be bound by the terms of this Agreement that are applicable to Seller's representative." Dkt. No. 23-1 at 1; FAC ¶ 11.

"The general rule is that a corporate officer's signature on a contract, with or without a designation as to representative capacity, does not render the officer personally liable." Neel v. Tenet HealthSystem Hosps. Dallas, Inc., 378 S.W.3d 597, 604 (Tex. App. 2012). However, "[t]he fact that a person is under an agency relation to another which is disclosed does not prevent him from becoming personally liable where the terms of the contract clearly establish the personal obligation." Am. Petrofina Co. of Texas v. Bryan, 519 S.W.2d 484, 487 (Tex. Civ. App. 1975). Texas courts have found individual liability where contracts included explicit language about personal guarantees. See, e.g., Austin Hardwoods, Inc. v. Vanden Berghe, 917 S.W.2d 320, 323 (Tex. App. 1995) ("If a corporation, the undersigned personally guarantees the payment of this account in his individual capacity."); 84 Lumber Co., L.P. v. Powers, 393 S.W.3d 299, 302 (Tex. App. 2012) ("I do unconditionally and irrevocably personally guarantee the credit account."); Material Partnerships, Inc. v. Ventura, 102 S.W.3d 252, 258 (Tex. App. 2003) ("I, personally, guaranty all outstandings [sic] and liabilities of Sacos Tubulares.");

Taylor-Made Hose, Inc. v. Wilkerson, 21 S.W.3d 484, 488 (Tex. App. 2000) ("personally agree[d] to pay all invoices and cost of collection ... on any amount remaining unpaid after 90 days").

No such language exists here. There is only one provision in the Agreement that is specifically applicable to the Seller's representative, and it reads as follows:

> 9.1.2 Jurisdiction and Service. Seller and its principals hereby agrees to the jurisdiction of any state or federal court located within the State of [New York], and waives personal service of any and all process upon Seller and consents that all such service of process may be made by certified mail directed to Seller at its address as it appears at the beginning of this Agreement and service so made shall be deemed to be completed five (5) business days after the same shall have been deposited in the U. S. mail, certified mail, return receipt requested, postage prepaid. By countersignature of this Agreement, the undersigned representative of Seller, individually, agrees to the terms of this Section 9.1.2 and its applicability in any Claim brought by Buyer against Seller's representative individually.

Dkt. No. 23-1. Gil's individual liability is clearly limited to personal jurisdiction and service of process. There is no indication that his signature as the Seller's representative was intended to create personal liability for all other terms of the Agreement, and the claims against him individually are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Count I as to Miami Leak is DENIED, and defendants' motion to

dismiss Count II as to Miami Leak is GRANTED with leave to amend within 30 days. Defendants' motion to dismiss Counts I and II as to Gil is GRANTED.

So ordered.

Dated:     New York, New York
           August 12, 2025

                              Louis L. Stanton
                              LOUIS L. STANTON
                              U.S.D.J.

-15-